**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

─────────

**No. 16-4280**

─────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

SCOTT STEWARD CAMMORTO,

        Defendant - Appellant.

─────────

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, District Judge.  (1:15-cr-00038-JPJ-PMS-1)

─────────

Argued:  May 11, 2017                        Decided:  June 13, 2017

─────────

Before NIEMEYER, MOTZ, and THACKER, Circuit Judges.

─────────

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Thacker joined.

─────────

**ARGUED:** Brian Jackson Beck, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant.  Kevin Lee Jayne, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  **ON BRIEF:**  Larry W. Shelton, Federal Public Defender,  OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  John P. Fishwick, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

─────────

NIEMEYER, Circuit Judge:

Scott Cammorto pleaded guilty to knowingly failing to register in Virginia as a sex offender, in violation of 18 U.S.C. § 2250. Based on his underlying conviction in Georgia for rape, the district court sentenced Cammorto as a Tier III offender pursuant to U.S.S.G. § 2A3.5(a)(1) and thus imposed an enhanced sentence of 41 months' imprisonment. Cammorto now challenges the district court's reliance on his Georgia rape conviction to find that he was a Tier III offender, contending that his Georgia rape conviction did not categorically match the federal crime so as to make him a Tier III offender.

We conclude that Cammorto's Georgia rape conviction does indeed satisfy the requirements for finding him a Tier III offender, as the Georgia offense was categorically "comparable to or more severe than" the federal crime of aggravated sexual abuse, as described in 18 U.S.C. § 2241, which is one of the offenses defining a Tier III offender. 42 U.S.C § 16911(4)(A)(i); *see also* U.S.S.G. § 2A3.5(a)(1); *id*. § 2A3.5 cmt. n.1 (incorporating definition of Tier III offender from 42 U.S.C. § 16911). Accordingly, we affirm.

I

In April 1999, Cammorto pleaded guilty in a Georgia state court to rape and kidnapping and was sentenced to 15 years' imprisonment. As required by the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16913, Cammorto registered as a sex offender in Georgia following his release from prison in August 2013.

2

In January 2014, however, Georgia authorities issued a warrant for Cammorto's arrest after discovering that Cammorto had moved without notifying them, in violation of SORNA. Cammorto was later apprehended in Bristol, Virginia, after authorities there responded to an unrelated domestic violence incident. He was then charged for knowingly failing to update his sex-offender registration in Virginia, in violation of 18 U.S.C. § 2250, and pleaded guilty to that charge in December 2015.

In preparation for sentencing, the probation office issued a presentence report recommending that Cammorto be sentenced as a Tier III sex offender based on his underlying Georgia rape conviction. Cammorto objected to the recommendation, contending that his Georgia rape conviction did not render him a Tier III offender and that he should, instead, be classified as a Tier I offender, which would have reduced his base offense level from 16 to 12 and reduced his ultimate sentencing range from 33–41 months' imprisonment to 24–30 months' imprisonment. He argued that, under Georgia law, a person can be convicted of rape for aiding or abetting the perpetrator and that, in fact, he was convicted as an aider or abettor because he did not have intercourse with the victim. He reasoned that under the categorical approach, his conviction for aiding or abetting rape was not "comparable to or more severe than" the federal offense of aggravated sexual abuse under 18 U.S.C. § 2241 and therefore that his Georgia conviction did not qualify as a predicate offense rendering him a Tier III offender.

At sentencing, the district court rejected Cammorto's objection. Applying the categorical approach, it compared the elements of the Georgia rape offense with the elements of federal aggravated sexual abuse under § 2241, which is a basis for finding a

3

defendant a Tier III offender, and found the two to be "a categorical match." The court explained that "under federal criminal law . . . aiding and abetting is not a separate offense from the crime," and therefore that the enumerated federal crime of aggravated sexual abuse must be understood to encompass aiding and abetting that offense. Moreover, the court explained that under the categorical approach, it could not peer into the factual record for Cammorto's underlying conviction for rape, noting that "Cammorto did not plead guilty to aiding and abetting rape; he pled guilty to rape." Based on its conclusion that Cammorto was a Tier III offender, the district court sentenced him to 41 months' imprisonment.

From the district court's judgment dated May 12, 2016, Cammorto appealed.

II

Cammorto contends on appeal that, because a person who never even touched the victim may nonetheless be convicted in Georgia of rape as an aider or abettor, the Georgia rape offense is broader than the federal offense of aggravated sexual abuse, and therefore, under the categorical approach, his rape conviction does not qualify as a predicate offense that renders him a Tier III sex offender.

To address Cammorto's argument, we begin with the Sentencing Guidelines. The Guidelines provide, with respect to sentencing for a conviction under 18 U.S.C. § 2250, that a sex offender who failed to register be treated based on the seriousness of his underlying sex offense, creating a tripartite classification that identifies Tier I, Tier II, and Tier III offenders. *See* U.S.S.G. § 2A3.5(a); *id.* § 2A3.5 cmt. n.1 (incorporating the tier

4

classifications from 42 U.S.C. § 16911). Under § 16911(4), a defendant is a Tier III offender if he has been convicted of an offense that is "punishable by imprisonment for more than 1 year and," as relevant here, "is comparable to or more severe than" an enumerated federal sexual offense "or an attempt or conspiracy to commit such an offense." 42 U.S.C. § 16911(4)(A). One of the enumerated federal offenses is "aggravated sexual abuse," as described in 18 U.S.C. § 2241. *Id.* § 16911(4)(A)(i). Thus, a defendant may be sentenced as a Tier III sex offender if the sex offense for which he was required to register was "comparable to or more severe than" aggravated sexual abuse under § 2241.

In determining whether the underlying sex offense is comparable to or more severe than the enumerated federal offense, we use the categorical approach, under which we compare the *elements* of the underlying offense of conviction — not the underlying facts — with the *elements* of the federal offense. *See United States v. Berry*, 814 F.3d 192, 195 (4th Cir. 2016). And if there is a "realistic probability" that the defendant could be convicted of the underlying offense for conduct that falls outside the scope of the federal offense, then the underlying offense does not categorically qualify as a basis for sentencing the defendant as a Tier III offender. *Id.* (quoting *United States v. Price*, 777 F.3d 700, 704 (4th Cir. 2015)).

The Georgia rape statute, under which Cammorto was convicted and for which he was subsequently required to register, provided that:

> (a) A person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs

5

when there is any penetration of the female sex organ by the male sex organ.

Ga. Code Ann. § 16-6-1 (1996). The federal statute defining aggravated sexual abuse, to which the rape statute must be compared, provides that "[w]hoever . . . knowingly causes another person to engage in a sexual act . . . by using force," or "by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping," or by rendering the victim unconscious, is guilty of the offense. 18 U.S.C. § 2241(a), (b).

It is readily apparent from a comparison of the elements that the Georgia rape statute is narrower than the federal offense under § 2241, such that the rape statute qualifies as a predicate offense for sentencing a defendant as a Tier III offender. Under the Georgia statute, the defendant must (1) engage in penetration of the female sex organ (2) forcibly against the victim's will. And "force is shown if the defendant's words or acts were sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to herself or others." *State v. Collins*, 508 S.E.2d 390, 392 (Ga. 1998) (internal quotation marks and citation omitted). Moreover, under Georgia law, force must always be proven as a factual matter; it is never presumed because of the age of the victim.[*] *See id*. at 391. The federal offense, by comparison,

---

[*] Georgia has since codified an exception to this rule where the victim is less than 10 years old. Ga. Code Ann. § 16-6-1(a)(2). Even if this exception applied at the time Cammorto was convicted, it would be of no consequence to our analysis. We have expressly held that the age of a victim is not subject to categorical-approach analysis, and thus we may take notice of the fact that the victim in Cammorto's case was 17 years old. *See Berry*, 814 F.3d at 199 ("[W]e apply the categorical approach in assessing whether a

6

requires only that the defendant (1) engage in a *sexual act* (2) by force or threat of force against the victim or any other person or by incapacitating the victim. 18 U.S.C. § 2254(a), (b). And "force," for purposes of the federal statute, includes not only physical force, but also "the use of a threat of harm sufficient to coerce or compel submission by the victim" so long as that threat is "sufficient to overcome, restrain, or injure a person." *United States v. Johnson*, 492 F.3d 254, 257 (4th Cir. 2007) (quoting *United States v. Weekley*, 130 F.3d 747, 754 (6th Cir. 1997)).

While not disputing the apparent match, Cammorto argues that, because the Georgia offense can be violated where the defendant aids or abets a rape but does not personally perform the sexual act, the Georgia offense covers a broader range of conduct than the federal offense of aggravated sexual abuse and therefore does not qualify as a predicate offense. This argument, however, is grounded in a misunderstanding of aider-or-abettor liability, under both Georgia law and federal law.

To be sure, under Georgia law, the rape statute can be violated by an aider or abettor. *See* Ga. Code Ann. § 16-2-20 (1996) (providing that anyone who "[i]ntentionally aids or abets in the commission of the crime" is "concerned in the commission" and therefore "may be charged with and convicted of commission of the crime"). Thus, an aider or abettor of rape is, as with any other crime, treated as a principal. *See Hendrix v. State*, 238 S.E.2d 56, 57 (Ga. 1977). But aiding-or-abetting liability does not broaden

---

defendant's prior conviction constitutes a tier III sex offense under Section 16911(4)(A), *with the exception that we look to the specific circumstance of the victim's age*" (emphasis added)).

the Georgia law beyond the relevant federal offense because, under federal law, aiders and abettors are *also* treated as principals. *See* 18 U.S.C. § 2(a) ("[W]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal"). Thus, just as a person who aided or abetted rape can be convicted under the Georgia rape statute, so can a person who aided or abetted the federal offense of aggravated sexual abuse be convicted of that offense.

Indeed, Cammorto's theory in relying on aiding-or-abetting liability to broaden the predicate offense was put to rest by the Supreme Court's decision in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185 (2007). In *Duenas-Alvarez*, the Court held that, where a state offense otherwise qualified as generic federal "theft," the fact that the state offense could be committed through aiding or abetting had no effect on its status as a categorical match. *Id.* at 189–90. The Court explained that "every jurisdiction — all States and the Federal Government — has 'expressly abrogated the distinction' among principals and aiders and abettors" who are "present at the scene of the crime" or "help[] the principal before the basic criminal event took place." *Id.* As a result, when employing the categorical approach:

> "[T]he generic sense in which" the term "theft" "is now used in the criminal codes of most States" covers such "aiders and abettors" as well as principals. And the criminal activities of these aiders and abettors of a generic theft must themselves fall within the scope of the "theft" in the federal statute.

*Id.* at 190 (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

Cammorto attempts to distinguish *Duenas-Alvarez* because the generic federal offense for Tier III status explicitly includes "attempt and conspiracy" along with the

8

substantive offense and therefore reflects, as he argues, an intent to exclude aiding-or-abetting liability, whereas the federal immigration statute in *Duenas-Alvarez* did not include liability for attempt or conspiracy. He argues that, in § 16911, which defines the three tiers of offense for U.S.S.G. § 2A3.5, Congress intended to capture three types of actors as Tier III offenders — those who actually commit the sex offense, those who attempt the offense, and those who conspire to do so — and by listing only those actors, it manifested its desire to exclude aiders and abettors. Congress' inclusion of attempt-or-conspiracy liability, however, in no way suggests that it intended to exclude aiders and abettors. Unlike with attempt, which is culpable only where expressly criminalized, *see, e.g.*, 18 U.S.C. § 1113 (attempted murder), or conspiracy, which is an independently chargeable crime, 18 U.S.C. § 371, there is no separate crime of "aiding" or "abetting" a federal offense, *see*, *e.g.*, *United States v. Lorick*, 753 F.2d 1295, 1297 (4th Cir. 1985) ("[S]ufficient evidence was adduced to convict the appellants as principals because each *either* committed the offense *or was an aider and abettor* (emphasis added)). Therefore, the federal statute's silence regarding aiding and abetting is not at all revealing. On the contrary, an express inclusion of "aiders and abettors" would have been redundant, given federal law's pervasive provision that aiders and abettors are principals.

We add that Cammorto's argument is not only wrong, but also untenable. Under his theory, any criminal law that confers principal liability on an aider or abettor would fall outside of its generic counterpart. Such a holding would mean that *no* federal offense could be treated as a predicate offense for purposes of ACCA, the Sentencing Guidelines, the Immigration and Nationality Act, or any other statute under which courts use the

categorical approach. This is not to mention that the criminal systems of *all States* have abolished the distinction between principal and aider-or-abettor liability. *Duenas-Alvarez*, 549 U.S. at 189–90.

III

At oral argument, Cammorto argued for the first time that Georgia's aiding-or-abetting law is broader than the federal aiding-or-abetting law. He reasons, therefore, that the Georgia rape law, taken with its broader aiding-and-abetting law, is accordingly broader than the federal offense of aggravated sexual abuse, even though the federal offense can also be violated by aiding or abetting. Specifically, Cammorto points to the language of the Georgia statute defining parties to a crime, which treats as a principal anyone who "advises, encourages, hires, counsels, or procures another to commit the crime," Ga. Code Ann. § 16-2-20(b)(4). He focuses on Georgia's inclusion of the word "encourages," which does not appear in the equivalent federal statute. *See* 18 U.S.C. § 2(a) (treating as a principal anyone who "aids, abets, counsels, commands, induces or procures" the commission of a crime). For this reason, he maintains that the Georgia law does not qualify as a predicate offense for sentencing him as a Tier III offender.

While it is doubtful that Cammorto appropriately preserved this argument, *see IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 308 (4th Cir. 2003) ("Failure to present or argue assignments of error in opening appellant briefs constitutes a waiver of those issues"), we find it nonetheless unpersuasive.

In making this argument, Cammorto overlooks the fact that the Supreme Court has defined federal aiding and abetting *to include encouragement*, stating that "[i]n

10

proscribing aiding and abetting, Congress [in § 2] used language that 'comprehends all assistance rendered by words, acts, *encouragement*, support, or presence.'" *Rosemond v. United States*, 134 S. Ct. 1240, 1246 (2014) (emphasis added) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993)); *see also* LaFave*, Substantive Criminal Law* § 13.2 (2d ed. 2003) ("[I]t may generally be said that one is liable as an accomplice to the crime of another if he . . . gave assistance or *encouragement*" (emphasis added)). Thus, contrary to Cammorto's argument, a person who "encourages" the commission of an offense is triable as a principal under both the Georgia rape statute and the federal statute prohibiting aggravated sexual abuse.

The Supreme Court's decision in *Duenas-Alvarez* forecloses Cammorto's argument for the *additional* reason that Cammorto has failed to show that Georgia law *actually* sweeps broader than federal law with respect to its aiding-or-abetting liability. In *Duenas-Alvarez,* the Court rejected an argument that the California law of aider-or-abettor liability was broader than the generic version because the California law "ma[de] a defendant criminally liable for conduct that the defendant did not intend." 549 U.S. at 191. The Court reviewed California cases and found that none showed that the State's understanding of intent "extend[ed] significantly beyond the concept as set forth in the cases of other States." *Id.* at 193. Importantly, the Court declined to explore fanciful hypotheticals that could support a conviction in California, but not under a generic definition, explaining:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability,

11

not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. *But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.*

*Id.* (emphasis added). Like the defendant in *Duenas-Alvarez*, Cammorto provides us with no Georgia case, including his own, suggesting "a realistic probability" that Georgia would treat a defendant as a principal where that defendant would not be principal under federal law. Quite to the contrary, Georgia case law shows that, to warrant conviction as a principal, an act of encouragement must go beyond mere "approval of the act." *Bullard v. State*, 436 S.E.2d 647, 650 (Ga. 1993) (reversing conviction for murder where defendant sat in car and did not protest while killer dismembered victim); *cf., e.g.*, *Jordan v. State*, 530 S.E.2d 192, 194 (Ga. 2000) (upholding murder conviction where defendant "donned camouflage pants and accompanied to the victim's home two armed men who had just discussed in his presence killing the victim," then, after the killing, helped look for shotgun shells and bury the body); *Hendrix*, 238 S.E.2d at 57 (upholding rape conviction where defendant "helped quiet" the victim, "choked her[,] and threatened her life").

*     *     *

In sum, we conclude that the underlying Georgia rape statute, on which the district court relied in sentencing Cammorto as a Tier III offender, sweeps no broader than the federal offense of aggravated sexual abuse in § 2241, and therefore the court properly used the Georgia rape conviction as a predicate offense to conclude that Cammorto

12

should be sentenced as a Tier III offender.  Accordingly, we affirm the judgment of the district court.

AFFIRMED